AO 91 (Rev. 08/09) Criminal Complaint

United States Courts
Southern District of Texas
FILED

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

MAR 22 2016

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ★ Jose Jaime SOLIS Jr. | ) | Case No. 4:16mj 415 |
| Ramon Hipolito SANCHEZ | ) | |
| ▅▅▅▅▅▅▅▅▅▅ | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____February 28, 2016_____ in the county of _____Webb_____ in the _____Southern_____ District of _____Texas_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 841(a)(1), (b)(1)(a) | did knowingly and intentionally possess with intent to distribute more than 5 kilograms of a mixture or substance containing a detectable amount of Cocaine, a Schedule II controlled substance; |
| 21 USC Section 846 | did knowingly conspire to intentionally possess with intent to distribute more than 5 kilograms of a mixture or substance containing a detectable amount of Cocaine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:
See the affidavit (Attachment A) in support of a Criminal Complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

_____Nate Fountain, Special Agent_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 03/22/2016

_____
*Judge's signature*

City and state: _____Houston, Texas_____  _____Dena Hanovice Palermo, Magistrate Judge_____
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. |
| | § | |
| JOSE JAIME SOLIS JR. | § | UNDER SEAL |
| ▉▉▉▉▉▉▉▉▉▉▉▉▉ | | |
| RAMON HIPOLITO SANCHEZ | | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Nate Fountain, being duly sworn, depose and state as follows:

1. I am a Special Agent of the United States Drug Enforcement Administration within the meaning of Title 18, United States Code § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code § 2516.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I have been a Special Agent since 2003. Since this time, and as part of my official duties, I have participated in investigations of narcotics trafficking, money laundering, complex conspiracies, and among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations. Through my training, education, and experience, I am familiar with the manner in which narcotics traffickers and money launderers conduct their operations, including, but not limited to, their methods of importing and distributing controlled substances, use of telecommunication devices to include cellular telephones, use of counter surveillance

techniques, and use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions.

3. I have completed numerous courses of formal instruction given by the DEA and other agencies related to narcotics and financial investigations, including courses on narcotics trafficking, money laundering, and complex conspiracies. I have participated in and led investigations resulting in the arrest of numerous drug trafficking suspects, and in the seizure of substantial quantities of illegal narcotics and proceeds of narcotics sales. I have participated in investigations involving the interception of wire communications and the use of video surveillance. I am familiar with the manner in which narcotics traffickers and money launderers conduct their operations.

4. As part of my duties as a DEA Special Agent, I have participated in long-term historical conspiracy investigations, as well as Organized Crime and Drug Enforcement Task Force (OCDETF) investigations targeting international drug traffickers. I have testified in federal judicial proceedings. I have been involved in the debriefing of defendants, witnesses and informants, and others who know about the distribution and transportation of controlled substances, money laundering, and the concealment of proceeds derived from drug trafficking. Further, I have conducted or participated in physical surveillance, electronic surveillance, undercover transactions, and the execution of arrest and search warrants in numerous narcotics investigations.

5. Based upon my training, experience, and participation in controlled substance and money laundering investigations which have resulted from violation of the United

States federal drug and money laundering laws, I prepared this Affidavit in support of a criminal complaint charging **Jose Jaime SOLIS Jr.,** ███████████████, **Ramon Hipolito SANCHEZ** with violating Title 21 USC § 841(a)(1) and (b)(1)(A); and § 846, to wit: to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, isomers, or salts of its isomers; and the conspiracy to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, isomers, or salts of its isomers.

## **PROBABLE CAUSE**

6. In February 2016, a DEA confidential source (CS) began providing information to DEA Laredo agents regarding an individual identified as Ramon Hipolito SANCHEZ aka "POPO" (SANCHEZ). The CS has been a CS since October 2015. The CS is working for compensation and is not a defendant in any active investigation. Information provided by the CS has been independently corroborated by Agents/Officers and has subsequently led to the seizure of approximately 16 kilograms of cocaine (Discussed later in this affidavit). With the information provided by the CS and the subsequent seizure of approximately 16 kilograms of cocaine, the CS is viewed as reliable and credible.

7. The CS stated that SANCHEZ was working for a drug trafficking organization in Laredo, Texas responsible for transporting multi-kilogram quantities of cocaine from Laredo, Texas to Houston, Texas using commercial bus lines. The CS stated that

SANCHEZ was interested in utilizing the CS to steal one of the loads of cocaine from the organization for whom he was working. Thereafter, they could sell the cocaine and share the profit. The CS stated that SANCHEZ contacted him/her in February 2016 and provided information about a large load of cocaine that was delivered to a commercial bus in Laredo, Texas. SANCHEZ asked the CS if the CS could be ready to steal the cocaine within a couple of hours. The CS stated he/she could not because he/she was out of town. The CS provided this information to DEA Laredo agents.

8. On February 28, 2016, the CS contacted DEA agents and stated SANCHEZ had again contacted him/her regarding a large load of cocaine which was to be delivered to a commercial bus line in Laredo, Texas for transport to the Houston, Texas area. SANCHEZ told the CS that SANCHEZ had firsthand information regarding the specifics of the cocaine that was to be transported. The CS, at the direction of controlling agents, agreed to assist SANCHEZ in order to find out more about the cocaine.

9. SANCHEZ told the CS that the drug traffickers would be delivering a black Protégé suitcase to the Tornado bus station in Laredo, Texas on the morning of February 28, 2016. SANCHEZ told the CS that he would be driving a black Chevrolet Malibu and following the drug traffickers who were driving a bluish green Chrysler 200 sedan.

10. SANCHEZ provided step-by-step updates to the CS as the drug traffickers arrived at the Tornado bus station. SANCHEZ told the CS that a Hispanic male wearing a winter vest was standing next to an El Expresso bus parked at the Tornado bus station. According to SANCHEZ, the individual wearing the vest was the one who would receive the cocaine and travel with it to Houston. SANCHEZ expected the CS

to follow the bus and steal the luggage from the under carriage of the bus when stopped near San Antonio, Texas.

11. Surveillance was established in the vicinity of the bus station where the El Expresso bus, along with the Hispanic male wearing the winter vest (███████████) was observed. ███████████ was observed lingering next to the bus near the undercarriage storage door area. A short time later, United States Border Patrol (USBP) agents, at the direction of DEA agents, conducted an immigration inspection and open air sniff of the luggage loaded under the bus. The USBP service canine positively alerted to the presence of drugs or concealed humans on a black Protégé suitcase.

12. Passengers were asked to claim their baggage. The black Protégé bag was never claimed. Further inspection of the abandoned bag revealed approximately 16 kilograms of cocaine. ███████████ departed the area while the immigration inspection was being conducted. ███████████ later returned to the bus, boarded and departed for the Houston, Texas area. The CS was contacted by SANCHEZ later on and told that something had gone wrong and the drugs were no longer available to be stolen.

13. DEA and USBP agents later went to the Tornado bus station to obtain video surveillance associated with the seizure of the 16 kilograms of cocaine. Agents were provided with footage showing a bluish green in color Chrysler 200 arrive at the bus station at the time of the transaction. The video showed a Hispanic male, identified as Jose Jaime SOLIS, Jr. exit the sedan and retrieve a black suitcase from the vehicle. The video further showed ███████████ looking in the direction of SOLIS as

SOLIS began walking toward the front of the bus where the cargo door is located with the suitcase. The bus obstructed the actual delivery of the black bag. The next available video footage showed SOLIS walking away from the bus, into the bus station, talking on his cellular telephone without anything in his hands.

14. While SOLIS entered the bus station, ███████ was observed by surveillance to close the door of the cargo door. SOLIS was then observed walking out of the bus station and returned to the Chrysler 200 sedan. SOLIS then departed the parking lot in the Chrysler 200 sedan. No other occupants exited the vehicle to accompany the suitcase that was delivered ███████. During the immigration inspection conducted by USBP, ███████ is observed walking away the inspection and into the bus station. ███████ was then observed walking to the opposite side of the bus station and talking on his cell phone. After the immigration inspection was completed, ███████ was observed meeting with an unknown female and unknown male. ███████ eventually boarded the bus.

15. Tornado bus employees recognized ███████ and stated that he is a former driver/employee of the company. One bus driver stated that he is acquainted with ███████ from the time they previously worked together. The driver stated that ███████ frequently takes trips (approximately every 2-3 weeks) originating in Monterrey, Nuevo Leon, Mexico and ultimately destined for Houston, Texas.

16. On March 15, 2016, DEA Agents in Laredo approached SANCHEZ regarding his involvement with cocaine trafficking and SOLIS. SANCHEZ agreed to accompany agents to the DEA Laredo District Office and answer questions. SANCHEZ was told

that he was free to leave whenever he wanted and did not have to answer any questions he did not feel comfortable answering. SANCHEZ acknowledged and agreed to answer questions. SANCHEZ stated approximately 6 to 7 months ago, Eddie GARCIA introduced SANCHEZ to Jose Jaime SOLIS Jr. SANCHEZ stated SOLIS resided in a white trailer house on the North side of the street at an address located on Aberdeen Drive in Magnolia, TX. SANCHEZ provided the phone number (346)309-7591 for SOLIS. SANCHEZ stated SOLIS drove a Nissan Sentra. SANCHEZ stated he was introduced to SOLIS by GARCIA because SOLIS had some work for him to do which he would be paid. SANCHEZ stated SOLIS hired him to drive SOLIS from Laredo to the Houston area. SANCHEZ stated SOLIS would pay SANCHEZ approximately $200 to $300 every time SANCHEZ drove SOLIS to Houston. SANCHEZ indicated that he drove SOLIS approximately 10 to 12 times from Laredo to the Houston area.

17. Further, SANCHEZ stated GARCIA would work with SOLIS to arrange the transport of the cocaine. SANCHEZ stated SOLIS had connections for transporting the cocaine from Laredo to the Houston area. SANCHEZ stated SOLIS had two individuals associated with the Tornado/El Expresso commercial bus company who assisted SOLIS in the transportation of cocaine. SANCHEZ stated one of the individuals (believed to be ████) was responsible for receiving the cocaine, which would be concealed in luggage bags. SANCHEZ stated the other individual (believed to be Ivan SIERRA) assisted SOLIS through the Tornado/El Expresso Bus company in an administrative role in either Houston, TX or Monterrey, Nuevo Leon, Mexico. SANCHEZ stated SOLIS would travel to Laredo by commercial bus, oversee the

cocaine transactions and then have SANCHEZ drive SOLIS back to Houston in SANCHEZ's vehicle. SANCHEZ stated he usually transported SOLIS by himself but on one occasion, SOLIS' wife, Dora, accompanied SANCHEZ and SOLIS back to Houston. SANCHEZ admitted he overheard SOLIS on an occasion discussing cocaine transactions over the phone with someone from the Tornado/El Expresso Bus Company. SANCHEZ stated he would meet SOLIS in the Laredo area and then would drive SOLIS to SOLIS residence in Magnolia, TX or to different public locations throughout the Houston, TX area.

18. On February 28, 2016, SANCHEZ was instructed by SOLIS to pick up SOLIS near the Tornado/El Expresso bus station in Laredo, TX at approximately 11:00 a.m. SANCHEZ stated SOLIS later changed the plans and SOLIS was dropped off at SANCHEZ's residence. SANCHEZ stated he and SOLIS then departed Laredo, TX in route to Houston, TX at approximately 1:30 p.m. During the trip to Houston, SANCHEZ overheard SOLIS discussing a possible United States Border Patrol interdiction of the cocaine (approximately 16 kilograms) that was to be transported on the El Expresso bus from Laredo, TX to Houston, TX. SANCHEZ stated SOLIS began to get argumentative on the phone and appeared to be upset. SANCHEZ overheard SOLIS tell GARCIA the cocaine had been seized.

19. On February 28, 2016, following the seizure of the cocaine, SANCHEZ stated SOLIS instructed SANCHEZ to drop SOLIS off at a Mambo seafood restaurant in Houston, TX. SANCHEZ returned later to pick up SOLIS from Mambo seafood and drove SOLIS to his residence in Magnolia, TX. SOLIS' residence has previously been

identified through the investigation as being located at 29510 Aberdeen Drive, Magnolia, TX.

20. Agents/officers conducted interviews with employees of Tornado Bus Company. Subsequent to the interviews, a Source of Information (hereafter referred to as SOI) was developed. The SOI was advised that he/she was not under arrest and was free to leave at any point during the interview. The SOI admitted SOLIS approached the SOI about working for SOLIS. According to the SOI, SOLIS requested that ▮▮▮▮ be hired as a driver for El Expresso Bus Company and further requested the SOI divulge specific bus information, such as routes, assigning specific drivers to certain routes and destinations.

21. During another interview occurring on March 18, 2016, the SOI stated that he travelled to the SOLIS' residence at 29510 Aberdeen Drive on February 7, 2016 at the request of SOLIS. Once the SOI arrived, SOLIS gave the SOI approximately $700.00 to deliver to ▮▮▮▮ for his role within the drug trafficking organization. On another occasion, the SOI stated he/she met with SOLIS and another individual at the Greenspoint Mall where the SOLIS again turned over $1,000-$2,000 to the SOI to deliver to ▮▮▮▮ as payment for ▮▮▮▮ services/role within the drug trafficking organization.

## CONCLUSION

22. Based upon the above, I submit there is probable cause to believe that **Jose Jaime SOLIS Jr., Jorge** ▮▮▮▮ **Ramon Hipolito SANCHEZ** have conspired to knowingly and intentionally manufactured, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, 5 kilograms or more of a mixture or

substance containing a detectable amount of cocaine, its salts, isomers, or salts of its isomers; and the conspiracy to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture , distribute, or dispense, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, isomers, or salts of its isomers, in violation of Title 21 USC § 841(a)(1) and (b)(1)(A); and § 846.

_____
Nate Fountain, Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this _____ day of March, 2016, and I find probable cause.

_____
DENA HANOVICE PALERMO
United States Magistrate Judge
Southern District of Texas